LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO. V. BIXLER.

1. FIREMAN AND BRAKEMAN ARE FELLOW SERVANTS.

The fireman of a locomotive and a brakeman on the same train are fellow servants and neither can recover for the negligence of the other.

2. RULE AS TO CARE REQUIRED OF EMPLOYER.

An employer is bound to use that degree of care and prudence generally used by prudent persons in the same business and to furnish safe and proper appliances for the performance of that duty, by the servant, or in regard to which the servant is to perform his duty; and that care is satisfied when the employer furnishes such appliances as are generally used in the business. The employer is not required to furnish absolutely safe and perfect machinery and appliances, nor is he required to insure the perfect condition thereof.

3. VIOLATION OF RULES BY SUPERIOR SERVANT—COMPANY LIABLE.

If it was a rule of a railway company that a fireman was not to manage an engine in the absence of the engineer, and the conductor gave an order to the fire-

man to assist in the switching of cars, knowing he was going to do it in the absence of the engineer, the company would be responsible on the ground that the conductor was giving an order forbidden by the rules of the employers.

4. FACTS EXEMPTING COMPANY FROM LIABILITY.

While a railway company would be responsible if a conductor on one of its trains, the engineer being absent, directed the fireman, knowing he was going to manage the engine, to assist in the switching of certain cars, by reason of which a brakeman was injured, the company would not be liable for an accident occurring to a brakeman through such fireman, while switching cars, where there is no evidence that the conductor gave the order to the fireman to move the cars, and none to show that the conductor knew whatever he did order to be done was to be done in the absence of the engineer.

5. ERROR TO SUBMIT PROPOSITION NOT PRESENTED.

It is error for the trial judge to submit a proposition to the jury which is not presented by the evidence.

HEARD OF ERROR.

LAUBIE, J.

The case of the Lake Shore & Michigan Southern Railway Company against George M. Bixler, is a proceeding in error brought to reverse the judgment of the court below, in an action on the part of Bixler against the company, to recover for injuries received while in the performance of his duties as a brakeman on the road.

The petition alleges certain acts of negligence, upon which a cause of action or right to recover is based.

It seems that Bixler was the head brakeman upon the freight train of the company and had been in its employ for some time, and on the occasion in question, was on the freight train running from Ashtabula to Youngstown. When they arrived at Andover, they put the train upon the side track, to wait for a passing train, and the conductor and engineer left the train and went to breakfast, and while they were gone, Bixler, the head brakeman, and Campbell, the rear brakeman, proceeded to change some of the cars from the center to the head of the train, the fireman undertaking to manage the train, through the engine, and by means of that to move the train. After it was coupled up over the crossing, it broke in two, at a point where there was a car that had what is called an Ames drawbar on it for coupling, and in recoupling the cars together at that point, the plaintiff was injured by having his hand caught in the machinery or appliances of the car. The negligence stated in the petition, in regard to these facts, are as follows:

" And plaintiff says that said defendant was guilty of negligence in the premises in this, to-wit:

"First. That it suffered and permitted said Ames drawbar so out of repair as aforesaid, to remain upon and be used on said car in the manner and for the time aforesaid.

"Second. That its conductor commanded and caused said work of transferring cars, as aforesaid, to be done, and left and abandoned the train (with the engineer) at the time and in the manner aforesaid.

"Third. And because of the other acts of negligence herein above set forth."

The acts of negligence above set forth, are found in this allegation: "That when the train arrived at said station at Andover aforesaid, said conductor wrongfully and negligently permitted the fireman to act as engineer for the time being, and ordered and directed him, said plaintiff, with said fireman, and one other brakeman, to transfer certain cars

near the center of said train, to a position near the head thereof, by switching the same in place, which train he, said conductor and said engineer, then and there wrongfully and negligently left and abandoned, remaining absent therefrom about thirty minutes, and thereupon and in obedience to said order, said fireman and the two brakemen undertook to do the work," and in the doing of which, as I have stated, the plaintiff had his hand caught and was injured.

The court had a peculiar case before it to try from this petition. The negligence charged against the conductor turned out to be the principal point of the case, and we find from what I have just read, and what the petition charges, "That when said train arrived at said station, at Andover, aforesaid, said conductor wrongfully and negligently permitted the fireman to act as engineer for the time being, and ordered and directed him, said plaintiff, with said fireman, and one other brakeman, to transfer certain cars near the center of said train, to a position near the head thereof, by switching the same in place." It is on the face of it, pretty difficult to discover what negligence there was in this; but we pass that by for the present and I go at once to the charge of the court.

The court gave the eleventh and fourteenth requests of the counsel for plaintiff to the jury, as the law of the case, to which counsel for defendant below excepted, and those requests are as follows:

Eleventh. "It is the duty of the company to see that safe and proper cars and appliances are furnished and maintained, for the running of their trains."

Fourteenth. "In the absence of notice to the contrary, a servant has a right to assume the master will perform the duty imposed upon him, of furnishing proper, adequate and perfect implements and appliances, necessary for the performance of any duty required of the servant."

In these requests it will be seen, that the court, without any qualification whatever, instructed the jury, in regard to absolute and perfect appliances. Is that the law? If it is, then the company is an insurer of the perfect condition of its appliances. "Safe" and "perfect" are absolute and not relative terms. When a thing is safe, it is safe absolutely, and you cannot make it any more so. When a thing is perfect, you cannot make it any more so. "Perfect" and "safe" ends the whole matter and you cannot make anything, where it is safe, more safe, or where it is perfect, more perfect. So the terms are absolute and not relative.

The duty of an employer to a servant, is to use that care and prudence that is generally used by prudent persons in the same business, and to furnish safe and proper appliances for the performance of that duty, by the servant, or in regard to which the servant is to perform his duty, and that care is satisfied when the employer furnishes such appliances as are generally used in the business; and that is very far from being required to furnish safe and perfect machinery. In these respects the court placed a duty upon the defendant company, that the law does not impose; therefore it was error.

The requests asked by counsel for the company below to be given, were those numbered eight and ten. The eighth was refused and the tenth was given, with modification.

Eighth. "If you find from the evidence, that the injury to the plaintiff was caused by the negligence of the fireman in moving said

train, the plaintiff cannot recover, for the reason that the fireman was a fellow servant of the plaintiff, and for any negligent or careless act of said fireman in this case, the plaintiff cannot recover.''

Tenth. ''If you find from the evidence in this case that the plaintiff would not have been injured, except for the acts of the fireman, the plaintiff cannot recover.''

Upon page 103 of the record, just after the requests which the court gave to the jury, and instructed them was the law as the requests on the part of the plaintiff, we find the court gave the tenth request of the defendant, with this qualification.

Tenth. ''If you find from the evidence in this case, that the plaintiff would not have been injured, except for the acts of the fireman, the plaintiff cannot recover, unless those acts were done under and in full compliance with the orders of the conductor.''

And in the same connection this matter is referred to by the court in its charge, on pages 109, 112 and 119. The court says, on page 109:

'' We instruct you that the defendant cannot be made liable to the plaintiff, in this action, for any carelessness of the engineer, in leaving the locomotive in charge of the fireman, or for any carelessness or negli-gence of the fireman, in running said engine or cars back suddenly, or carelessly, or for any carelessness of either the fireman or engineer, unless you, each and all of you, find that it has been proven, by a pre-ponderance of all of the evidence in this case, having any bearing thereon, that the fireman was acting under the immediate orders, direc-tions and control of the conductor, made directly to him by the con-ductor, when he backed up said train, and in the backing of it up, in the way and manner that you find that it was done, as proven by the evidence, and then we instruct you that the company would not be liable for the acts of the fireman, in so backing up the train, under the directions of the conductor, unless it has also been proven, by a pre-ponderance of all of the evidence in this case, that the backing of the train was carelessly and negligently done, in pursuance of said orders, directions and control of the conductor.''

On page 119 of the record the court says: ''Does the evidence show that any orders were given by the conductor? If so, what were they and to whom were they given? Were they acted upon and carried out precisely as he gave them? Was the injury complained of caused by the carrying out any orders of the conductor precisely as he gave them, as the necessary and proximate cause of the injury?''

It will be seen that this response was to the request made on this point by counsel for the defendant, and that the court said to the jury that they could not find, on this ground, a verdict against the defendant, unless they found that the injury was caused solely by the negligence of the conductor in ordering and directing the fireman to make that coupling, at the time when the coupling was being done, and if such was the case, then if it was negligently or carelessly done by the fireman, the plaintiff would be entitled to recover, if he was injured thereby. So the court made the case turn upon the proposition, that the conductor had personally given the directions to the fireman, at the time when the coupling was being made, and the fireman carried out those orders pre-cisely as given.

The evidence shows this state of facts. When they arrived at Andover, the conductor and engineer safely placed the train upon the

Railway Co. v. Bixler.

siding, and it was cut, as the saying is, for the highway and the water was taken by the engine after this was done ; the conductor and engineer, as it is stated, went over to the hotel to get their breakfast; they were to lay there on the siding, waiting for a train to come and pass them.

Conceding for a moment that an order was given to change cars in the train from the center to the front ; the parties remaining in charge of the train were the fireman and two brakemen, one of whom was the plaintiff, and they proceeded in the performance of that duty and it was done in the absence of the conductor and engineer, and in the performance of that duty the train broke in two. It was not in doing any act that the conductor had instructed them to do in transferring cars, but it was in repairing that break in the train, that the plaintiff was injured.

So in regard to the coupling that was done, the conductor knew nothing about it, until after it took place. The plaintiff was injured by coupling the cars together and the conductor knew nothing of it, and consequently gave no orders to the fireman or any one else to make the coupling, except such as might be embraced in the performance of the duty of transferring these cars. It might be necessary to make that coupling and repair that break, in order to perform that duty, but as far as the coupling itself is concerned, the conductor knew nothing about it and gave no orders about it.

So far as the record discloses, the plaintiff himself was the only person that gave any orders about it. He gave the orders to the fireman and signaled the fireman to back up and make the coupling, after he had obtained a pin that he thought would do to make the coupling with. He was the one who gave the signals and directed the fireman to move the engine. Let us see about this a little further, from the record. There were but two parties who testified as to whom the orders were given, or said that they remembered anything about it, and they were the fireman, Redhead, and the plaintiff, the brakeman. The fireman says:

"Q. Who told you what there was to do ?

"Counsel for defendant object; objection overruled, and counsel for defendant except.

"A. The head brakeman and the hind man came to me and told me 'Fred Campbell and Mr. Bixler.'

"The Court: Told you what ?

"Counsel for defendant object; objection overruled, and counsel for defendant except.

"A. That there were some cars in the train near the hind end, that they wanted to get ahead for Doughton, Ohio.

"The Court: What ?

"A. The cars were consigned to Doughton, Ohio.

"Q. Do you know who they got their orders from?

"Counsel for defendant object.

"The Court: Did you hear the orders given ?

"A. No, sir."

That is the testimony of the fireman, that no orders were given to him, that the plaintiff told him what was to be done, and that he did not hear any orders given.

We will see what the plaintiff said. And I now read from the direct examination of the plaintiff on page 8.

"Q. When you reached Andover what happened, what was said and what was done?

"Counsel for defendant object.

"The Court: Confine it to what was said between you and the conductor.

"A. Nothing, only we had instructions from the conductor.

"The Court: Ask the questions direct.

"Mr. Hall: I wish to have that answer withdrawn.

"The Court: It may be withdrawn.

"Q. What, if any, authority had the conductor over you?

"Counsel for defendant object.

"The Court: We think he may answer that.

"Counsel for defendant except.

"A. He was foreman over me; I was to do what he told me.

"Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except.

"Q. What, if anything, did he tell you, relative to making this coupling, or attempting to make it?

"Counsel for defendant object; objection overruled, and counsel for defendant except.

"A. He told me to do it.

"Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except.

"Q. Tell us what he said? A. He said to do this work.

"Q. Tell us what he said? A. I cannot remember just what he said.

"Q. Give us the substance of what he said about it? A. He told us to do the work.

"Counsel for defendant object.

"The Court: If you can give the **exact** language used you should give it.

"A. I do not recollect it.

"The Court: If you do not recollect the exact language, but you recollect the substance of what was said, then give the substance of what was said; if you do not recollect anything about it, then you cannot speak.

"Witness: I do not recollect what he said at all.

"Mr. Hoyt (resuming):

"Q. What did he say about your making these couplings that morning? A. I do not remember what he said.

"Q. You cannot give the words? A. No, sir.

"Q. Was the conductor there at the train, at the time of the accident? A. No, sir.

"Q. Where was he? A. He was over at the hotel, I believe.

"Q. Where was the engineer? A. He was with him, I believe.

"Q. With who? A. The conductor.

"Q. Who were left in charge of the train? A. Myself, Fred Campbell and Harry Redhead.

"The Court: Mr. Campbell was the other brakeman?

"A. Yes, sir.

"The Court: And Mr. Redhead was the fireman?

"A. Yes, sir.

"Mr. Hoyt (resuming):

Railway Co. v. Bixler.

"Q. So the conductor and engineer were both absent? A. Yes, sir.

"Q. What, if any, instructions did you get from the conductor to make any transfer of any car?

"Counsel for defendant object, as he said he got none.

"The Court: Do you understand this question?

"A. Yes, sir.

"The Court: We think he may answer it.

"Counsel for defendant except.

"A. We had orders from him to do this switching.

"Counsel for defendant object to the answer and ask to have it excluded; motion overruled, and counsel for defendant except.

"Q. What switching? A. To get these cars.

"Mr. Hall: I object; I want to know when.

"The Court: When a witness commences answering let him go through with the answer. The when of it would be proper cross-examination, we think.

"Mr. Hall: I object to it, because he does not confine it to the day of the accident, and also for the reason that it calls for the opinion, or construction of the witness; he having already answered that nothing was said that day, that he could remember.

"The Court: We think the objection on the last ground is well taken. It leaves him to determine what instructions were given him; what did he say?

"Q. You may state what the conductor said to you about making a transfer of certain cars, giving the substance of it?

"Counsel for defendant except.

"A. He told us to switch some cars out, that were in the rear end of the train, and put them on the head end, that were to be set off at a way station.

"Q. Did he tell you what cars? A. Yes, sir.

"Q. When was that?

"Counsel for defendant object.

"The Court: We think he may answer.

"Counsel for defendant except.

"A. He told us to do this just before he went away, and he then explained how he did the work."

Then I pass to his cross-examination on pages 25 and 26.

"Q. Did you see the conductor, when he started for his breakfast? A. I could not tell.

"Q. Did you see the engineer when he started for his breakfast? A. I could not tell whether I did or not.

"Q. Do you say that the conductor, before starting for breakfast that morning, gave you any orders? A. Yes, sir.

"Q. You do? A. He gave us orders.

"Q. I am speaking of you. Did he give you any orders? A. Yes, sir.

"Q. What did he say? A. I could not tell; he gave us orders to switch the cars.

"Q. You cannot tell what he said? A. No, sir.

"Q. Who was present? A. I cannot tell you that.

"Q. Was anybody present? A. I cannot say.

"Q. What were you waiting for (after he was asked about going on the siding)? A. I do not know.

"Q. Were you not waiting for another train? A. I presume likely; I do not remember.

"Q. Were you head or rear brakeman? A. I was head brakeman.

"Q. Who signaled the man in the cab of the engine to move the train? A. Whoever wanted it moved.

"Q. That don't answer my question. The conductor was gone and the engineer, you say? A. Yes, sir.

"Q. Did you signal him? A. I don't know whether I did or not.

"Q. Do you say you did not? A. I don't say I did not; I presume I signaled him."

And the uncertainty of his testimony is illustrated by what follows, on pages 27 and 28:

"Q. Did the fireman start without any signal? A. I don't know; I presume not.

"Q. When it started did it break in two? A. I think not.

"Q. Do you say it did not break in two between the two cars where you were afterwards hurt? A. No, I do not say it did not.

"The Court: Did you disconnect it there?

"A. No, sir.

"The Court: Did any one, so far as you know?

"A. No, sir.

"Mr. Hall (resuming):

"Q. Then it broke, didn't it? A. It broke, yes; but it did not break, if I remember right, when we started.

"Q. When did it break? A. It broke when we were backing up.

"Q. When? A. When we were doing the switching.

"Q. While the conductor and engineer were gone? A. Yes, sir.

"Q. It broke in two and you took measures to couple it, did you? A. Yes, sir."

And so forth. I only read this to illustrate the difficulty of his telling what took place that day. It thus appears from the plaintiff's own testimony that he could not tell what the orders were that were given, and he could not say that anybody was present when they were given.

Redhead; the engineer, swears that no orders were given to him by the conductor, and that the plaintiff was the man who told him what was to be done. Was it proper for the court to tell the jury and leave it to them to determine that if the conductor had directed the fireman to make this coupling at the time he did make it, that if the fireman obeyed those orders precisely as they were made and carelessly and negligently backed up and caused the injury to the plaintiff, that the plaintiff was entitled to recover? In other words, may a court leave to a jury, for the decision of the case, a proposition that is not maintained by the evidence? There is nothing to explain or show that the conductor understood that the fireman was to manage the engine. It seems from the testimony they left the train at different times, not together; but there is nothing in the evidence, even to show that the conductor understood that the fireman was to manage the engine alone, much less giving him direct orders to that effect.

In addition, suppose he did, what then? Does it establish or tend to prove any negligence on the part of the defendant, that an employee shall give direction to some of his subordinates to do a piece of work, and then go off himself and leave him to perform it, and this fellow servant

negligently does it and injures another, that the one that is injured may recover? There is nothing stated in regard to any negligence on the part of the conductor, in the order itself, but simply that he gave the orders to the fireman and the fireman carelessly performed the duty and injured the plaintiff and then the defendant is responsible. That is simply saying the employer is responsible to one fellow servant for injuries caused by another.

There might be a case, where the order itself would be negligent, under the circumstances; but no such case is made here. If the order was given to the fireman by the conductor, and the conductor knew the fireman was going to manage the engine, and he was incompetent to do so, then the company might be responsible, because he had directed knowingly an incompetent man to do the work, by which the plaintiff might be and was injured. So then, if it was a rule of the company, that the fireman was not to manage the engine, in the absence of the engineer, and the conductor gave the order to the fireman to do that, knowing he was going to do it in the absence of the engineer, then the company might be responsible, because the conductor then was giving an order forbidden to be given by the rules of the employers; but none of these qualifications are added. If they were made in the evidence none of them were added to the charge. The charge is square, positive and pointed that if the conductor gave the order to the fireman and the fireman was negligent in doing it, the plaintiff is entitled to recover.

There was no evidence that the conductor gave any order to the fireman, and there is no evidence to show that the conductor knew whatever he did order to be done was to be done in the absence of the engineer. For these reasons, we think the case will have to be reversed.